Greco, J.
This is a Dist./Mun. Cts. R. A. D. A., Rule 8C, appeal by plaintiff Jerry Santana (“Santana”) of the allowance of summary judgment against her on the ground that her medical malpractice suit was barred by the applicable statute of limitations.
Santana alleged in her complaint, which was not verified, that on August 27, 1998, she gave birth to a baby at defendant Brigham & Women’s Hospital (“Brigham’s”), and was treated at that time by defendant Elizabeth Scott (“Scott”), a licensed midwife. Santana further alleged that her vagina was lacerated during the delivery, that Scott used “gauze or a gauze like substance” to stop the bleeding and that she was unaware that Scott failed to remove the gauze at the time of her discharge from the hospital. When Santana returned to Brigham’s on September 8,1998 for a follow-up visit, a doctor removed the gauze and prescribed antibiotics. “[B]ecause of worsening pain, discomfort and discharge in the vaginal area,” Santana returned to the hospital on September 28,1998. It was on that date, as alleged in her complaint, that Santana “discovered that she was suffering for [sic] additional and appreciable harm due to the negligence of the defendants for not removing the gauze in a timely fashion.” This action was not commenced, however, until September 17, 2001, more than three years after the delivery of the baby, but less than three years after the September 28,1998 hospital visit.
Contending that the applicable statute of limitations was in fact three years, as provided in G.L.c. 231, §60D, Brigham’s and Scott moved for summary judgment. In support of that motion, the defendants submitted the affidavit of the custodian of Brigham’s records, to which were attached the records pertaining to Santana’s treatment in September of 1998. Those records indicate that on September 3rd, Santana called the hospital, complaining of pain in the vaginal area; that on the next day, she came to the hospital in person, at which time gauze was discovered in the vagina and removed; that blackened tissue around the area was cleansed; and that a further referral was to have been made if there was “no improvement.” On September 8th, it was noted in the records that the “wound [was] healing well” and that there was no longer any blackened tissue. Santana was instructed to continue cleansing the area and to come back on September 18th. On the 18th, it was noted that Santana was complaining of, among other things, a fever and some pain; that the “labial laceration continue [d] to heal”; and that the “healing process” was discussed "with Santana with the aid of an interpreter. Ten days later, on September 28th, Santana was again seen at the hospital. According to the records, she *80 complained of pain in conjunction with urination and of a vaginal discharge. Although the person who saw her concluded that the labial laceration had “almost completely healed,” Santana requested a referral for someone else to examine her laceration.
In response to the defendants’ summary judgment motion and supporting materials, Santana filed a written opposition and a memorandum of law. While in the opposition Santana’s counsel listed various admissions being made by her and also proffered additional facts claimed to be undisputed, nothing was in affidavit form or in any way stated under oath. Moreover, no request was made pursuant to Mass. R. Civ. P., Rule 56(f), for a continuance of the proceeding to allow time for affidavits to be prepared or discovery to be conducted. See Tetrault v. Mahoney, 425 Mass. 456, 458 (1997). After a hearing, the court allowed the defendants’ Rule 56 motion and entered summary judgment in their favor.
1. At the time this lawsuit was filed, Santana was twenty years old. Under G.L.c. 231, §60D, “any claim by a minor against a health care provider stemming from professional services or health care rendered ... shall be commenced within three years from the date the cause of action accrues.” This three year limitation is not affected by G.L.c. 260, §7, which provides that if a person “is a minor, or is incapacitated by reason of mental illness when a right to bring an action first accrues,” the time to bring an action is tolled until “the disability is removed.” As noted in McGuinness v. Cotter, 412 Mass. 617, 624 n.8 (1992), “the more specific provisions of... §60D override this aspect of §7 in the medical malpractice context. See Boudreau v. Landry, 404 Mass. 528, 530-531 (1989).” Indeed, §60D specifically states that it applies “[njotwithstanding the provisions” of §7. See also Harlfinger v. Martin, 435 Mass. 38, 4041 (2001).
However, “[i]n medical malpractice cases, Massachusetts recognizes ‘the principle that a plaintiff should be put on notice before [her] claim is barred.’” Malapanis v. Shirazi, 21 Mass. App. Ct. 378, 382 (1986), quoting Franklin v. Alpert, 381 Mass. 611, 619 (1980). Under this discovery rule, Santana’s cause of action accrued at the point in time when she had “(1) knowledge or sufficient notice that she was harmed and (2) knowledge or sufficient notice of what the cause of harm was.” Bowen v. Eli Lilly & Co., 408 Mass. 204, 208 (1990). See also Riley v. Presnell, 409 Mass. 239, 244 (1991).
2. While “the question when a plaintiff knew or should have known of [her] cause of action is one of fact which in most instances will be decided by the trier of fact,” Id. at 240, summary judgment has often been held to have been appropriately granted to defendants in cases turning on this question. See, e.g., Bowen v. Eli Lilly & Co., supra at 208-211; Phinney v. Morgan, 39 Mass. App. Ct. 202, 209 (1995); Malapanis v. Shirazi, supra at 383 and cases cited. “Where summary judgment is sought on the basis of the statute of limitations, once the defendant establishes that the time period between the plaintiff’s injury and the plaintiff’s claim exceeds the applicable limitations period, the burden is on the plaintiff to prove her claim falls within the discovery rule.” Lindsay v. Romano, 427 Mass. 771, 773-774 (1998).
Since it is undisputed that Santana’s injury dated back to the delivery of her baby on August 27,1998, the defendants satisfied their initial burden of showing that three years had gone by before suit was brought. In addition, the defendants’ submissions do not themselves indicate that there is any “genuine issue as to any material fact” on the discovery issue. Rule 56(c). According to the hospital records, the gauze was discovered and removed on September 4, 1998. Since on September 4th and again on September 8th, Santana was instructed to cleanse the area, the only fair inference from the records is that she was aware at least by those dates of the problem caused by the gauze. In these circumstances, the burden then shifted to Santana to show that she did not discover the harm and the *81 cause of the harm until after September 17,1998; i.e., three years prior to the filing of this action. To satisfy that burden, she could not “rest upon the mere allegations” of her complaint, but had to, by affidavits or as otherwise provided in ... [R]ule [56], ... set forth specific facts showing that there is a genuine issue for trial.” Rule 56(e). She failed to do this. The complaint itself was not verified and was not, therefore, the functional equivalent of an affidavit. See Godbout v. Cousens, 396 Mass. 254, 262-263 (1985); Altman v. Mesbahi, 1999 Mass. App. Div. 130, 133. Because the factual statements contained in Santana’s written opposition were also not sworn to, she cannot rely upon them to defeat summary judgment. See Zuroff v. First Wisconsin Trust Co., 41 Mass. App. Ct. 491, 492 (1996). The only affidavit ever filed in opposition to the defendants’ Rule 56 motion was one Santana filed in this Appellate Division — obviously in the wrong place, at the wrong time. See Kourouvacilis v. General Motors Corp., 410 Mass. 706, 711 (1991) (an affidavit filed in the right place, the trial court, was not filed until three days after the motion hearing and was deemed appropriately disregarded). In these circumstances, “the plaintiff’s failure to make the responsible showing is fatal.” Godbout v. Cousens, supra at 263.
Even if the allegations in the complaint, the facts proffered in the written opposition to summary judgment and the affidavit Santana submitted to this Appellate Division were all considered, the defendants would still be entitled to summary judgment. Santana does not state in any of those documents that she learned of the gauze left in her vaginal area or of the causal connection between the gauze and her discomfort until sometime after September 17, 1998. Rather, the gravamen of the various allegations is that it was not until September 28,1998 that she realized the problem caused by the gauze was significant enough to form the basis of a cause of action.[2] However, nothing in the record indicates that the defendants misled Santana. When she became aware of the problem that was causing her discomfort, the clock started to run. If it were otherwise, the limitations period would never start running until a patient subjectively decided that relief was taking longer than expected. “One need not apprehend the full extent or nature of an injury in order for a cause of action to accrue.” Phinney v. Morgan, supra at 208. As the Appeals Court stated in Malapanis v. Shirazi, supra, a case also involving a seventeen year old, “this plaintiff’s attention had been adequately directed to the traumatic events ... to put [her] on notice that the defendants]’ conduct might have caused [her] harm.” Id. at 386.
Summary judgment for the defendants is affirmed.
So ordered.

 Santana alleged in her complaint that when the gauze was removed, she was prescribed “antibiotics and assured,” but it was on September 28th that she “discovered that she was suffering for additional and appreciable harm due to the negligence of the defendants” in not removing the gauze earlier. In the written opposition to summary judgment, her counsel stated that although she was aware of the problem with the gauze on September 4th, on September 28th “her discomfort was worsening, [and] ... she was experiencing pain and a yellow vaginal discharge continued.” Finally, in her affidavit to this Division, she again stated that the September 4th examination revealed the gauze, but that she “didn’t find out that [she] had been injured until after the pain and discomfort persisted and wouldn’t stop or go away, and that was some time after 09/28/98.”